## T. Chubb and others v. Lucy Johnson.

The Act of 1848, (Hart. Dig. Art. 2420,) which enacts " that every female, under " the age of twenty-one years, who shall marry in accordance with the laws of " the State, shall, from and after the time of such marriage, be deemed to be of " full age, and shall have all the rights and privileges to which she would have " been entitled, had she been, at the time of her marriage, of full age," applies to marriages, which had taken place before the passage of the act, but not so as to legalize or affect any act done before that time.

Estates vest in the heirs, incumbered with the debts ; an heir can sell his interest, and unless it appear that property which has been sold by the sole heir, is required to pay debts, the purchaser will be protected.

Where a person is sole heir and administrator, and sells property of the estate without the authority of the County Court, it will be considered that he sold the property as heir, and not as administrator.

Appeal from Galveston. Suit by Lucy Johnson, by her next friend, against Thomas Chubb and others, including her husband, Owen D. Johnson, to recover certain property which had belonged to the estate of her deceased former husband, whose administratrix she was. The property had been sold to Chubb, the plaintiff and her husband joining in the deed, which was formally acknowledged according to law, for passing the wife's interest. There was no allegation nor proof that the property was required to pay debts. The grounds on which the plaintiff claimed a recovery, were, 1st, fraud on the part of Chubb ; 2nd, that she had no authority to sell without an order of Court, nor at private sale ; 3rd, that she was under twenty-one years of age when the sale was made. The jury found specially that there was no fraud on the part of Chubb, but that the plaintiff recover the property. Judgment accordingly ; motion for new trial overruled, and defendants appealed.

*M. M. Potter*, for appellants. I. At the time of the trade between Johnson and wife and Chubb, Mrs. Johnson was

under twenty-one years of age, but being a married woman, she was in law of full age, and capable of making a binding contract. (Hart. Dig. Art. 2420.) True, she was married before the passage of this Act, yet we submit that it would be giving an unreasonable construction to the law, and one not intended by the Legislature, to say that those who were married previous to March 13th, 1848, and were, at the time of marriage, under twenty-one, should be excluded from the benefits and liabilities growing out of its provisions ; and that those who were married subsequent to that date, although numbering fewer years, should be in the eye of the law considered within its provisions.

II. Under our laws an heir, devisee or legatee, may, by giving bond, &c., as provided for, obtain immediate possession of and a perfect title in the property belonging to the estate. (Hart. Dig. Art. 1220.)

This provision, in legal effect, is similar to that of the Louisiana Code, by which the heir may signify his consent to take the estate " pure and simple," and by so doing the title to the property vests in him, and he thereby becomes liable for all the debts against the estate. And the Supreme Court of Louisiana say, that where the heir has sold, although he was at the same time executor or administrator, the Court will presume that he had accepted the estate " pure and simple " as heir, and will protect a purchaser at private sale under him, although the act of sale mentioned that he was executor. (Duplissis v. White, case in print attached ; Civil Code of Louisiana, Art. 934, 940, 982, 984, 988, 989.)

The pleadings and facts of this case show that Mrs. Johnson was sole heir of Martin ; and as she has assumed to sell the property which she inherited through her child from Martin, we submit that the legal presumption follows that she had taken possession of the property under the provisions of Art. 1220, and had a perfect legal title in and right to sell the same. And we think the Court would raise this or any other fair presumption, to protect innocent purchasers ; especially where,

as in this case, it appears from the evidence offered by the defendants, that there were ample means belonging to the estate, aside from the property here in question, with which to pay all debts against the estate of Martin. From this fact it is evident that the object of this suit is not to recover the property for the benefit of the creditors of the estate, but purely for the benefit of the plaintiff and her husband.

Under our laws governing descent and administration of estates, both real and personal estates pass in the same manner, and are alike subject to administration. In most of their features the laws of the State of Mississippi on this subject are similar to ours. (Hutchison's Code, Tit. DEVISE, and DESCENT, p. 623, and TESTAMENT and ADMINISTRATION, p. 647, &c.) And the high Court of Errors and Appeals, in the case of Cable v. Martin, 1 How. R. 558, held that heirs who were entitled to distributive shares of an undistributed estate, could sue and recover against persons in adverse possession of the property belonging to the estate. Now if this be the law, then certainly there is such an interest vested in the heir before distribution, as would pass by a conveyance or assignment of his share of the estate, and entitle the purchaser to receive or recover such share on the distribution of the estate. In the case now presented to the Court, the distribution of the estate of Martin would be a mere form, "a shadow without substance," as the plaintiff, on resigning the administration, would still be entitled to the property as heir. We presume that it will not be contended that were Mrs. Johnson to sell her entire interest in Martin's estate, the purchaser would not, after the payment of the debts against the estate, be entitled to the remainder of the property; and if this proposition be conceded, then we ask, why should the plaintiff, after having fairly sold a part of the property of the estate as heir, be allowed to recover it back as administratrix, when there is sufficient of other means belonging to the estate with which to pay all debts against the same ? Is not the entire transaction, on the part of the plaintiff in this cause, contrary to equity and good conscience ?

*R. Hughes*, for appellee. I. Though we grant that all acts of administration by Mrs. Johnson, notwithstanding her non-age, were valid, yet we cannot admit that the things done here were valid; on the contrary they were void. She was only administratrix; and in that character only, had title to the property. She was a trustee for the creditors and distributees, and had title to the property not in her own right, but in right of her intestate. (Toller's Law of Exec. 133.) It is true that as the survivor of the matrimonial partnership, she was entitled to one half the property in question, being community property, after the payment of the debts of the community; (Hart. Dig. 735, Art. 2410;) and by reason of the death of her child, as its heir, to the other half, to which the child would have been entitled after the payment of the debts. (Hart. Dig. 216, Art. 577, Sec. 3, 4; Id. 214, Art. 591.)

But this vested no present right of property in the administrator, because, as before stated, Mrs. Johnson's one half was that which remained after the payment of the debts; and so of the child; and this only could be ascertained through the administration; and until the administration closed, she could not hold in any other right than that of another. As to one half, she claimed as survivor; but that claim only became vested, after payment of the debts, in the remainder; and as to the other half as heir to her child, in like manner, having no interest vested to anything until payment of the debts.

Before closing the succession, the husband for his own purposes, sells a portion of the estate, from which the succession derives no benefit; and we insist that the sale is void, though the administratrix joined in it; because the act was a devastavit, and the sale was without consideration, received by the succession. (Knireton v. Latham, Cro. Char. 490; Knot & Knot, Exr's v. Barlow, Cro. Eliz. 671; Toller's Law of Exec. 356; Whitmore v. Wild, 1 Vernon, 328, n. 2.)

If it be thought that the administratrix, by virtue of possession as administratrix, being distributee and heir, had title,

and as such had a right to sell, then we say the sale vas voidable, because, at the time of its execution, Mrs. Johnson was a minor, and she may avoid it. (4 Bac. Ab. 371, 372.) This is a matter in deed, and is only voidable by the infant or his representatives. (Id. 371, 372, 367.)

Though, as the testimony shows, Mrs. Johnson was only turned of seventeen when administration was granted, the grant of letters to her was not illegal, because the statute authorizes the grant to the surviving wife, without restriction. (Hart. Dig. 324, Art. 995.) This changed by subsequent statute. (Id. 357, Art. 1119.)

It cannot be maintained, that Mrs. Johnson, was of age, by reason of her marriage; because the act of 1848, was only prospective. (Hart. Dig. Art. 2420.)


LIPSCOMB, J. The jury in the Court below, by their verdict, having found that there was no fraud, on the part of the appellants, the question is reduced to one of authority, in law, on the part of the defendant, or appellee in this Court, Lucy Johnson, to make a valid contract. If she was in a situation, to make a legal contract in relation to the property, the sale of which is the subject of this controversy, the verdict of the jury cannot be sustained, and the judgment thereon must be reversed; if she was under a legal incapacity, that incapacity would sustain the verdict. And there can be no doubt, the Court below based its opinion, upon the supposed, legal incapacity of Mrs. Johnson to contract in relation to a sale of the property, the contract for which is sought to be set aside.

The Court below must have rested its opinion of the legal incapacity of Messrs. Johnson, upon two grounds, or one of them. First, The minority of the party; or secondly, upon the fact that she was an administratrix, and the property sold being assets of the estate of her intestate, she had not the legal capacity to sell by a voluntary private sale.

The first question is believed to be settled by our statute. It is as follows: " That every female, under the age of twenty-

59

"one years, shall, from and after such marriage, be deemed to "be of full age, and shall have all the rights and privileges, "to which she would have been entitled, had she been, at the "time of her marriage, of full age." (Hart. Dig. Art. 2420, Act of March 20th, 1848.) We do not believe that it would be a fair construction of this Act, to limit it to marriages, to take place after its enactment. It cannot be presumed that the Legislature intended such an absurdity as to make a female marrying at the age of fourteen of full age, because the marriage had taken place after the date of the enactment, and one of the same age, married a day before the enactment, to be under the legal disability until she arrived at the age of twenty-one. The Act of the Legislature could give no sanction to an act of the wife, done before its passage; but it would sanction such acts as were performed after its passage, by a married woman, although she had been married before its enactment. If the Act had undertaken to give validity to the acts of a married woman, under twenty-one years of age, done and performed previously, it would have been obnoxious to the objection of being an *ex post facto* law, and unconstitutional. In this Act the Legislature has not assumed to act upon an individual incapacity, but upon a disability that attached to all married women, under the age of twenty-one years. The time when they were married was not so much the object of the Legislature, as to remove the disability under which all married women were subject until they were twenty-one years old. The fact of the marriage, in this case, being before the Act, did not prevent her claiming any privilege, as one of full age, in a transaction after its passage. Nor can she claim any immunity from such acts of her own.

It is however believed, that the opinion of the Court below was based mainly upon the fact of Mrs. Johnson's being an administratrix of Martin at the time she sold the property; and it is doubtless true as a legal proposition, that an administrator cannot sell the property pertaining to the estate of his intestate, at private sale. This proposition grows out of the

fact, that the legal title is not in the administrator; that he is only the agent or trustee, constituted by law, for the benefit of heirs and creditors; and he can only execute his trust in the way authorized by law; and the law gives him no authority to sell at private sale. If, therefore, the administrator has no other interest in the property, than as administrator, he can make no sale of the property, in any other mode than such as is authorized by law. And we have repeatedly decided, and it may now be considered the law of this Court, that on the death of the ancestor, the property is immediately vested in the heir or testamentary devisee, subject to, and incumbered with, the payment of debts. For the payment of these debts, the administrator is entitled to the possession, under such regulations as the law prescribes. This was not so at Common Law; but, by that law, the administrator held the legal title, and the heir the equitable. (See Portis v. Coles, *Ante* 157.) We have no distinction, with us, between law and equity; and there can be no doubt, that with us the heir could sell and convey his title to the property, the purchaser taking with the incumbrance stated. If it were admitted that at Common Law, such sale could not be sustained, still it is unquestioned that equity would sustain and protect the purchase, if fairly made. But we may advance further, and suppose that a purchase so made, was from the sole heir, and that there was ample and sufficient assets in the hands of the administrator, to pay all the creditors, would the administrator be permitted to procure an order of sale, and seize upon and sell this property to pay the debts. We think not; but if necessary to prevent it, Chancery would interpose, and compel the administrator to satisfy the creditors from other funds in his hands belonging to the administration. An executor would not be permitted to sell for the payment of debts, a specific devise, so long as he had sufficient assets, not specifically appropriated by the will, in his hands.

There are many considerations that would give additional force, in the application of these principles, to the precise case

before us. The administratrix is the sole heir, and as heir, she was under no disability to sell her whole interest, subject to no claim, but that of creditors, should there be any. She sues as administratrix, for property that she, as sole heir, has sold. In her petition she alleges no specific amount of outstanding debts, no individual creditor, nor the amount of assets in her hands to be administered. The record does not disclose the existence of a single creditor, nor a single debt or claim against the estate, unsatisfied; and the inference is that there are none. The jury have found that the contract was untainted by fraud. To permit her, under such circumstances, to recover the property, that she had so sold fairly, would be lending the aid of this Court to the perpetration of a fraud on those who, from the record, were fair and honest purchasers, presuming upon her right, being the sole heir, to sell. She can, on no principle of equity jurisprudence, claim such aid ; and she will not be allowed, from her double capacity, as from a masked battery, to perpetrate a fraud, by selling, as the legal owner and sole heir, and then, on the naked fact of being also the administratrix, to sue for and recover the property.

The Court below seems to have regarded the sale as the sale of an administratrix, and not of the sole heir, when the facts will not sustain any such conclusion, and the presumption is the very reverse; because, as the former, she could not have made the sale, and as the latter, she was under no legal disability. Or, perhaps, the Court below may have believed that the mere fact of her being the administratrix overshadowed and destroyed all power or capacity to sell her interest as heir. This, as we have shown, is not true.

The Court seemed to have thought that the mere fact of her being the administratrix, without the slightest evidence or probability of outstanding claims or debts, would afford a presumption of law, that such outstanding claims or debts really did exist. We will examine the correctness of this conclusion. The administration had been granted to her near three years, before the sale of the property by her as the sole heir; and

her petition, as before stated, alleges no particular creditor, or the amount of the indebtedness of the estate, nor the amount of assets in her hands, nor why the estate had been kept open so long. From all of these circumstances, the presumption would be strong, if not conclusive, that when she sold the property as her own, she being sole heir, there was not an outstanding claim or debt in existence, against the estate; or that she held ample and sufficient assets besides the property she sold, to satisfy all such claims.

It is very clear that this is not a contest for the benefit of creditors; and it is equally clear, that it is an effort, under color of an administration, to set aside a sale of the wife's separate property, made by her in strict conformity with the law. In relation to such sales, our decisions show with what scrutinizing anxiety, this Court has uniformly sustained the just and legal rights of the wife, to the protection of her separate property; but we cannot permit her to become a participant with her husband, in a fraud upon honest purchasers; and as such we are constrained to consider them in this case, from the verdict of the jury, repudiating any charge of fraud against them. In the language of this Court in Hartwell v. Jackson, 7 Tex. R. 582, "such ambidextrous shuffling and "double dealing between husbands and wives, to the injury of "third parties, is repugnant to every dictate of honesty, and "is sanctioned by no principle of law." And the Supreme Court of the United States in Bien v. Heath, 6 Howard, 247, says, "The equitable powers of this Court can never be ex- "tended in behalf of one who has acted fraudulently, or who, "by deceit or any improper means, has gained an advantage. "To aid a party in such a case, would make this Court the "abettor of iniquity. And we suppose that this principle ap- "plies to the case under consideration. A *feme covert* acting "under her own responsibility, under the liberal provisions of "the Louisiana law, may act fraudulently, deceitfully or in- "equitably, so as to deprive her of any claim to relief."

The facts in this case show that the wife acted upon her own

responsibility, without any influence or misrepresentation, and that she not only assented to the sale, but was anxious to have it effected ; that she and her husband went into the possesion and enjoyment of the property received as the consideration of the sale ; that part of the property was destroyed or become worthless by the negligence of the husband; and no offer has been made, nor would it be possible, to restore the property in the condition it was received. It would therefore be a manifest fraud upon the purchasers, to rescind the sale.

Without discussing several other questions raised upon the record, in this case, we are satisfied that the Court below erred in its judgment, and that the facts do not sustain the verdict of the jury, and that there ought to have been a new trial granted. The decree is therefore reversed and the cause remanded.

Reversed and remanded.